UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NATASHA W.,

                      Plaintiff,

           v.

MICHELLE KING,[1] Acting Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**22-CV-317-LGF**
(**consent**)

APPEARANCES:              HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                                Attorneys for Plaintiff
                                IDA M. COMERFORD,
                                JUSTIN DAVID JONES, and
                                KENNETH R. HILLER, of Counsel
                                6000 North Bailey Avenue
                                Suite 1A
                                Amherst, New York  14226

                                TRINI E. ROSS
                                UNITED STATES ATTORNEY
                                Attorney for Defendant
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York  14202
                                      and
                                BENIL ABRAHAM, and
                                RICHARD HUGH FOX
                                Special Assistant United States Attorneys, of Counsel
                                Social Security Administration
                                Office of General Counsel
                                26 Federal Plaza
                                Room 3904
                                New York, New York  10278
                                      and

---

[1] Michelle King became the Acting Commissioner of the Social Security Administration on January 21, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

JASON PARKERSON PECK
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of General Counsel
6401 Security Boulevard
Baltimore, Maryland  21235

## JURISDICTION

On October 1, 2024, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 27, 2022 (Dkt. 10), and by Defendant on January 6, 2023 (Dkt. 18).

## BACKGROUND

Plaintiff Natasha W. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on August 5, 2016, for Supplemental Security Income under Title XVI of the Act ("disability benefits").  AR at 248-54.[2]  Plaintiff initially alleged she became disabled on November 1, 2003 ("disability onset date" or "DOD"), based on major depression, generalized anxiety, scoliosis, migraines, carpal tunnel, low back pain, and high blood pressure.  AR at 248, 270.  Plaintiff's application initially was denied on November 14, 2016.  AR at 174-79.

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant in three parts on July 26, 2022 (Dkts. 4, 5 and 6).

On November 29, 2016, Plaintiff timely filed a request for an administrative hearing, AR at 182-84, and on August 10, 2018, an administrative hearing ("the first hearing") was held via videoconferencing before Administrative Law Judge ("ALJ") David J. Begley ("ALJ Begley"), in Falls Church, Virginia.  AR at 32-61.  Appearing and testifying at the first hearing were Plaintiff, in Buffalo, New York, represented by Nicholas DiVirgilio, Esq. ("DiVirgilio"), and impartial vocational expert ("VE") Shannon Hollander who appeared by telephone.  At the first hearing, Plaintiff's alleged DOD was amended, at Plaintiff's request, to August 5, 2016, the application date.  AR at 36.

On November 29, 2018, ALJ Begley issued a decision denying Plaintiff's claims, AR at 11-31 ("first ALJ decision"), which, on December 10, 2018, Plaintiff timely appealed to the Appeals Council.  AR at 1376.  On September 9, 2019, the Appeals Council denied Plaintiff's request to review the first ALJ decision, rendering the first ALJ decision the Commissioner's final decision at that time.  AR at 1374-81.

On November 18, 2019, Plaintiff commenced an action in this court seeking judicial review of the first ALJ decision and a Decision and Order entered on February 23, 2021, vacated the first ALJ decision and remanded the matter to the Commissioner "for proper consideration of [P]laintiff's migraine headaches." *Whiteside v. Comm'r of Soc. Sec.*, No. 19-CV-01556-JJM, slip. op. at 10 (W.D.N.Y. Feb. 23, 2021); AR at 1403-19 ("the District Court's Order").  On April 14, 2021, the Appeals Council entered an order remanding the matter to an ALJ for further proceedings consistent with the District Court's Order.  AR at 1421-25 ("Appeals Council's Order").  Upon remand by the Appeals Council, the matter was assigned to ALJ Paul Georger ("ALJ Georger" or "the ALJ").

On November 19, 2021, a second administrative hearing was held in Buffalo, New York before ALJ Georger, who appeared by telephone with Plaintiff, again represented by DiVirgilio, appearing and testifying in person ("second hearing"). AR at 1345-73. Testimony was also given by vocational expert Joseph Young ("the VE"), who appeared by telephone. AR at 1366. On December 28, 2021, ALJ Georger issued a decision denying Plaintiff's claims, AR at 1313-44 ("second ALJ decision"). On April 27, 2022, Plaintiff commenced the instant action seeking review of the second ALJ decision denying Plaintiff disability benefits.

On September 27, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum"). On January 6, 2023, Defendant moved for judgment on the pleadings (Dkt. 18) ("Defendant's Motion"),[3] attaching the Commissioner's *Memo*. in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Ms. Whiteside's *Memo*. Pursuant to Local Rule 5.5 (Dkt. 18-1) ("Defendant's Memorandum"). Filed on January 27, 2023, was Plaintiff's Reply Brief to Defendant's Motion for Judgement [*sic*] on the Pleadings (Dkt. 19), advising Plaintiff was relying on her initial arguments because any further argument "would simply duplicate arguments made in the original brief," but informs the court of a recent decision by the Second Circuit that is relevant to the instant

---

[3] On December 26, 2022, Defendant filed a motion for an extension of time, 30 days, to file the Commissioner's Brief (Dkt. 16), as well as an amended motion seeking the same relief but advising Plaintiff consented to the extension (Dkt. 17). Although neither was granted by the court, Defendant's motion was filed on January 6, 2023 (Dkt. 18), rendering moot both the motion and amended motion seeking an extension of time to file Defendant's motion. Both the original and amended motions seeking the extension of time, as well as Defendant's motion, were filed before the parties consented to proceed before the undersigned on October 4, 2024.

case, *i.e.*, *Claudio-Montanez v. Kijakaza*, 2022 WL 17819123, at * 3 (2d Cir. Dec. 20, 2022).  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## FACTS[4]

Plaintiff Natasha W. ("Plaintiff"), born March 16, 1983, was 33 years old as of her alleged disability onset date ("DOD") of August 5, 2016, and 38 years old as of December 28, 2021, the date of the second ALJ decision.  AR at 36, 248, 1336, 1351. Plaintiff lived in an apartment with her 15-year old son and her boyfriend.  *Id*. at 269, 286, 1351, 1361.  Plaintiff has a driver's license, but because driving increases her anxiety, Plaintiff only occasionally drives and usually relies on her boyfriend for rides. *Id*. at 289, 1351-52.  Plaintiff attended school through 8th grade in regular classes, and has had several unsuccessful attempts at obtaining a GED, but can read and write and do some math.  *Id*. at 271, 1352.  Plaintiff has not taken any vocational courses nor served in the military, *id*. at 1352, and her only work experience was at a day care and in a fast-food establishment, both more than 15 years earlier.  *Id*. at 271, 1352-53. Plaintiff cares for her son and six feral cats.  AR at 1544, 1765, 1770.

Plaintiff has a long history of psychiatric impairments and back pain,[5] and also suffers from migraines.  Plaintiff obtains primary care at Niagara Family Medicine

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

[5] On July 27, 2005, Plaintiff was found disabled as of May 27, 2003, when Plaintiff was 23 years old, because of a depressive disorder and post-traumatic stress disorder ("PTSD"), but on June 14, 2012, the SSA determined Plaintiff was no longer disabled as of May 1, 2012 and her disability benefits were terminated.  AR at 143-69.  When Plaintiff's disability benefits were terminated, she was determined to

Associates from primary care physician Allison L. Wasson, D.O. ("Dr. Wasson").  AR at 423-53.  From August 30, 2012 until May 2, 2016, Plaintiff obtained medical treatment for her migraines and carpal tunnel syndrome from Nyathappa Anand, M.D. ("Dr. Anand").  AR at 412-22.

On January 19, 2019, Plaintiff was a passenger in a vehicle that was involved in a "low speed" accident in which the vehicle's air bags did not deploy ("the accident").  AR at 2064.  Following the accident Plaintiff, who remained ambulatory, went to the Emergency Department of Mount St. Mary's Hospital in Lewiston, New York, seeking treatment for a left shin injury she sustained in the motor vehicle accident.  AR at 2064.  Plaintiff later sought treatment for leg and low back pain attributed to the accident, including chiropractic treatment and pain medication.  AR at 1630-1700, 2269-2323.

During the time relevant to Plaintiff's claim, Plaintiff received treatment for her mental impairments from numerous other medical sources who provided opinions including psychologist Christopher J. Keller, Psy.D. ("Dr. Keller"), with New York State Office of Mental Health ("NYSOMH"),[6] licensed marriage and family therapist ("LMFT") Lindsay Latham  ("LMFT Latham"), of Horizon Health Services ("HHS"), Joshua Morra, M.D. ("Dr. Morra"), of HHS, and psychiatrist Olga Barrios, M.D. ("Dr. Barrios"),[7] of

---

have several severe impairments, including depression, anxiety, and vertebrogenic disorder, but such impairments did not render Plaintiff unable to engage in substantial gainful employment.  *Id.*   Plaintiff challenged the termination of her disability benefits and on November 17, 2014, the termination of Plaintiff's benefits was upheld upon reconsideration after two hearings before an administrative law judge.  AR at 62-94, 95-129, 146-62, and on July 28, 2016, the administrative decision was upheld by the Appeals Council.  AR at 170-73.  The present application is, however, a new application and not a continuation of Plaintiff's prior administrative disability claim.

[6] Plaintiff received mental health treatment services through Buffalo Psychiatric Center – North Tonawanda Clinic.  AR at 1358.

[7] At various points in the record, Dr. Barrios is referred to as "Dr. Cruz-Barrios."  *See*, *e.g.*, AR at 1769.

NYSOMH.  Plaintiff commenced mental health treatment through NYSOMH after being discharged from HHS for noncompliance with treatment and missing appointments.  AR at 1769.  Following the accident, Plaintiff treated with chiropractor Michael J. Cardamone, D.C. ("Dr. Cardamone"), and rehabilitation and pain management specialist Vikas Pilly, M.D. ("Dr. Pilly").

Dr. Keller provided medical source statements on May 23, 2018, AR at 1089 (repeated at AR at 1263) (Plaintiff unable to work for 7 – 11 months because of PTSD and unspecified bipolar disorder), July 6, 2018, AR at 1306-12 (assessing Plaintiff as "seriously limited" in 5 of 25 categories of mental abilities and aptitudes needed for work, but either "unlimited" or "limited but satisfactory" in the remaining 20 categories), and May 7, 2021, AR at 1745-53 (estimating Plaintiff's mental health impairments were expected to last at least 12 months, would preclude Plaintiff from performing a job for 30% of her scheduled time and to miss more than four days of work per month).  LMFT Latham completed a Mental Health Report ("MHR"), on February 10, 2016, AR at 1265 (Plaintiff's mental health diagnoses include generalized anxiety disorder, and major depressive disorder, recurrent and moderate, which rendered Plaintiff unable to work for 7-11 months).  On February 8, 2017, Dr. Morra completed an MHR, AR at 1264 (Plaintiff's mental health impairments included major depressive disorder, recurrent and moderate, generalize anxiety disorder, and PTSD, which rendered Plaintiff unable to work for 7-11 months).  Dr. Barrios completed a medical source statement on July 21, 2021, AR at 1781-87 (reporting Plaintiff has PTSD and unspecified bipolar disorder, but none of Plaintiff's mental abilities were so diminished as to impair her ability to work, yet Plaintiff was expected to be off task 30% of a work day, would miss four days of work

each month, and her impairments would last at least 12 months).  On April 13, 2021, Dr. Cardamone completed a medical source statement regarding Plaintiff's physical impairments, AR at 1740-44 (assessing Plaintiff with back pain resulting in limitations to sitting, standing, and walking, lifting and carrying, and postural limitations, which were expected to cause Plaintiff to miss four days of week each month).

In connection with her disability benefits application, Plaintiff underwent several consultative examinations including on October 21, 2016 by psychologist Christine Ransom, Ph.D. ("Dr. Ransom"), who opined Plaintiff's major depressive disorder and unspecified anxiety disorder were "currently mild" and would "not significantly interfere with [Plaintiff's] ability to function on a daily basis," ("Dr. Ransom's opinion"), AR at 730-34, and John Schwab, D.O. ("Dr. Schwab"), who opined Plaintiff "should avoid any activity that triggers a migraine," and that Plaintiff was mildly restricted to bending, lifting, carrying, and repetitive hand activities, ("Dr. Schwab's opinion"), AR at 736-41. Plaintiff underwent further consultative examinations on October 8, 2021, by Hongbiao Liu, M.D. ("Dr. Liu") who opined Plaintiff had "mild limitations for prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavy weights, prolonged sitting, and standing," and that migraine headaches may interrupt Plaintiff's scheduled activities ("Dr. Liu's opinion"), AR at 2332-43, and by psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia"), who opined Plaintiff's mental health impairments include major depressive disorder, mild, and unspecified anxiety disorder, which could cause difficulties in understanding, remembering, applying complex directions and instructions, regulating emotion, controlling behavior, and maintaining well-being because of distractions, but such difficulties would not be significant enough to interfere with Plaintiff's ability to

8

function on a daily basis ("Dr. Santarpia's opinion"), AR at 2324-31.  On November 14, 2016, State agency psychological consultant A. Dipeolu, Ph.D. ("Dr. Dipeolu"), a single-decision maker, reviewed Plaintiff's medical records and completed a Disability Determination Explanation, concluding the medical evidence did not support a finding that Plaintiff is disabled ("Dr. Dipeolu's opinion"), AR at 131-42.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the Commissioner's factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[8] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe

---

[8] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need

not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, in the second ALJ decision, ALJ Georger found that Plaintiff has not engaged in substantial gainful activity ("SGA") since August 5, 2016, the application date.  AR at 1318-19.  The ALJ found Plaintiff suffers from the severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spines, migraine headaches, bipolar disorder, generalized anxiety disorder, and PTSD, AR at 1319, as well as other impairments including gastrointestinal impairments, hypertension, hyperlipidemia (elevated cholesterol), and tachycardia (rapid heartbeat), mild left carpal tunnel syndrome, and obstructive sleep apnea, but that such impairments do not cause more than a minimal limitation of Plaintiff's ability to perform basic work activities and are therefore non-severe.  *Id*.  The ALJ further found that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 1320-22. Despite her physical and mental impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b),[9] with several nonexertional limitations including that Plaintiff can occasionally use ramps and stairs, never use ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, and

---

[9] As relevant,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b).

is limited to simple, routine, repetitive tasks, simple work-related decisions, occasional

interaction with supervisors, co-workers, and the general public, with occasional

changes to the worksite and routine, can tolerate occasional exposure to loud noise,

and requires a sit-stand option with the opportunity to change position every 30 minutes.

*Id*. at 1322-34. Although Plaintiff has no past relevant work, the ALJ found that Plaintiff,

based on her age, limited education, lack of work experience, and RFC, could perform

work existing in significant numbers in the national economy including as a marker,

routing clerk, and office helper.  *Id*. at 1334-35.  Accordingly, the ALJ found Plaintiff was

not disabled as defined in the Act since August 5, 2016, when Plaintiff filed her

application.  *Id*. at 1335-36.

### 3.    Analysis of Plaintiff's Arguments

In support of her motion, Plaintiff argues that remand is warranted because the

ALJ, failed to follow the treating physician rule[10] when weighing treating psychologist Dr.

Keller's opinions, Plaintiff's Memorandum at 18-25, and that the ALJ's rejection of

chiropractor Dr. Cardamone's opinion is not supported by substantial evidence.  *Id*. at

---

[10] The court notes that based on Plaintiff's application date of August 5, 2016, the ALJ was required to apply the so-called "treating physician rule" whereby, generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted).

25-27.  Plaintiff's Memorandum at 13-16.  In opposition, Defendant argues that contrary

to Plaintiff's argument on this point, the ALJ properly applied the treating physician rule

when analyzing Dr. Keller's opinions and other medical evidence in the record,

Defendant's Memorandum at 5-20, and also properly considered Dr. Cardamone's

opinion.  *Id*. at 20-22.

Under the "treating physician rule," for disability benefits claims filed, like the

instant claim, prior to March 27, 2017, an opinion from a treating medical source is

entitled to controlling weight so long as the "opinion on the issue(s) of the nature and

severity of [the claimant's] impairment(s) is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record...."  20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2).  *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d

Cir. 2017) (treating physician's opinion generally entitled to controlling weight when

"well-supported by medically acceptable clinical and laboratory diagnostic techniques

and [ ] not inconsistent with other substantial evidence in the case record.") (citations

omitted).  Where, however, an ALJ discounts a treating physician's opinion, the ALJ

must set forth "good reasons" for doing so.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d

Cir. 2008) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  The failure to

provide good reasons for rejecting a treating physician's opinion is grounds for remand.

*Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has

not provided 'good reasons' for the weight given to a treating physician opinion and we

will continue remanding when we encounter opinions from ALJ's [*sic*] that do not

comprehensively set forth reasons for the weight assigned to a treating physician's

opinion.").  Further, the opinion of a treating physician is entitled to significant weight where it is supported by medical evidence in the record, and to controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  *See Genier v. Astrue*, 298 Fed.Appx. 105, 108 (2d Cir. 2008) ("If the treating physician's opinion is well-supported by other medical evidence, then it is given controlling weight." (citing 20 C.F.R. 416.927(d)(2))).  Treating physician opinions, however, are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence. 20 C.F.R. §§ 404.1527(d), 316.927(d); *Halloran*, 362 F.3d at 32 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)), "'and the report of a consultative physician may constitute such evidence.'"  *Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).  Although "the ALJ is certainly free to consider the opinion of [other medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician."  *Genier,* 298 Fed.Appx. at 108.

Where an ALJ discounts a treating physician's opinion, the ALJ must provide "good reasons" for the weight assigned to the opinion according to the four so-called "*Burgess* factors" articulated by the Second Circuit Court of Appeals in *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2009), derived from 20 C.F.R. § 416.727(c)(1)-(5), including (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.  Although the

15

ALJ's failure to expressly consider these factors is a procedural error that may warrant remand, "slavish recitation of each and every factor" is not required provided the ALJ's "reasoning and adherence to the regulations are clear."  *Atwater v. Astrue*, 512 Fed.Appx. 67, 70 (2d Cir. 2013).  So long as the court's review of the record demonstrates that "the substance of the treating physician rule was not traversed" the ALJ's decision must be affirmed even when the ALJ did not "explicitly" consider each of the *Burgess* factors.  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (despite the ALJ's failure to "explicitly consider" each of the *Burgess* factors, the ALJ's decision should be affirmed if a "searching review" of the record demonstrates "that the substance of the treating physician rule was not traversed.") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).  Here, a "searching review" of the record establishes the treating physician rule was not traversed.

Plaintiff particularly takes issue with the ALJ's treatment of Dr. Keller's May 7, 2021 mental medical source statement, AR at 1747-53, in which Dr. Keller noted Plaintiff's diagnoses included PTSD and unspecified bipolar and related disorders.  AR at 1747.  Dr. Keller reported Plaintiff's prognosis was fair if Plaintiff were compliant with treatment which included pharmacological and psychosocial treatment.  *Id*.  Signs and symptoms of Plaintiff's mental health impairments included mood disturbance, paranoid thinking or inappropriate suspiciousness, unrealistic interpretation of signs or sensations associated with the preoccupation or belief that one has a serious disease or injury, and sleep disturbance.  *Id*. at 1748.  Plaintiff was not limited in 11 of 21 separately listed mental abilities and aptitudes needed to do unskilled work including remembering work-like procedures, understanding and remembering very short and simple instructions,

carrying out very short and simple instructions, maintaining attention for two hour segments, making simple work-related decisions, asking simple questions or requesting assistance, interacting appropriately with the general public, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, traveling to unfamiliar places or using public transportation, being aware of normal hazards and taking appropriate precautions, and setting realistic goals or making plans independently of others. *Id*. at 1749-51. Plaintiff was also assessed by Dr. Keller as being precluded for 10% of an 8-hour workday for six of the remaining 10 mental abilities and aptitudes including understanding and remembering detailed instructions, carrying out detailed instructions, sustaining an ordinary routine without special supervision, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in a routine work setting. *Id*. at 1750-51. Plaintiff was further assessed as being precluded for 11% to 20% of an 8-hour workday for three other categories of mental abilities and aptitudes including maintaining regular attendance and being punctual within customary, usually strict tolerances, completing a normal workday and workweek without interruptions from psychologically based symptoms, and dealing with normal work stress. *Id*. For the final mental ability and aptitude, *i.e.*, working in coordination with or proximity to others without being unduly distracted, no box was checked. *Id*. at 1750. Dr. Keller explained the Plaintiff's expected difficulties with sustained concentration and memory were based on Plaintiff's history of attending treatment appointments which was often affected by

changes to Plaintiff's psychosocial and environmental stressors,[11] her expected difficulties with social interactions were based on Plaintiff's intermittent paranoia, and Plaintiff's difficulties in adapting were attributed to the presence of psychosocial and environmental stressors which reduced Plaintiff's capacity to effectively deal with normal daily work stress.  *Id*. at 1751.  Based on his assessment of Plaintiff's mental and physical limitations, Dr. Keller estimated Plaintiff would be off-task for 30% of an 8-hour workday, miss at least four days of work per month, and Plaintiff's mental health impairments were expected to last at least 12 months.  *Id*. at 1752.  Plaintiff was not then working, and Dr. Keller did not anticipate that her symptoms and functional limitations would increase if Plaintiff were to work in a full-time position. *Id*. at 1752-53. Further, Dr. Keller indicated that Plaintiff's functional limitations he identified likely existed as of August 5, 2016, *i.e.*, Plaintiff's disability benefits application date.

Preliminarily, with regard to the fourth *Burgess* factor requiring the ALJ consider whether a treatment provider is a specialist, although Plaintiff argues the ALJ ignored this factor, Plaintiff's Memorandum at 23, the ALJ specifically identifies Dr. Keller as a psychologist who became Plaintiff's treatment provider in 2018, one month before Dr. Keller completed the July 6, 2018 Mental Medical Source Statement, AR at 1330-31, and that Dr. Keller was still treating Plaintiff when he completed the May 7, 2021 Mental Medical Source Statement.  AR at 1331.  Accordingly, the ALJ satisfied the fourth factor.  *See Samantha B. v. Kijakazi*, 2021 WL 4288442, at * 11 (N.D.N.Y. Sept. 21,

---

[11] According to an Appointment History attached to Dr. Keller's May 7, 2021 Mental Medical Source Statement, for the 3-year period April 18, 2018 through April 14, 2021, Plaintiff was scheduled for 106 appointments at NYSOMH, of which Plaintiff was a "no-show" for 29, Plaintiff canceled three, and Plaintiff rescheduled 20.  AR at 1754-56.  In total, Plaintiff missed 52 of 106 scheduled appointments, or just under 50%.

2021) (concluding the ALJ satisfied the fourth *Burgess* factor by describing a doctor as "the claimant's psychiatrist," noting the plaintiff received treatment at the doctor's clinic, and summarizing the plaintiff's treatment over the two-year course of treatment with the doctor).  Turning to the first factor, Plaintiff argues the ALJ completely failed to address the frequency, length, nature, and extent of treatment by Dr. Keller, including that between April 18, 2018 and April 1, 2021, Plaintiff had 30 appointments with Dr. Keller, as well as appointments with other treatment providers at NYSOMH.  Plaintiff's Memorandum at 20-21.  Defendant argues the ALJ noted that Dr. Keller was Plaintiff's treating psychologist, as well as the longevity of Plaintiff's treating history with Dr. Keller. Defendant's Memorandum at 8-9 (citing AR at 1307-12, 1330-34).

Despite receiving mental health treatment for more than three years at NYSOMH there are scant treatment notes in the record prepared by Dr. Keller or any other health provider at NYSOMH.  In fact, other than the three separate Mental Medical Source Statements prepared by Dr. Keller, the only other records pertaining to Plaintiff's care through NYSOMH is an assessment that was completed when Plaintiff commenced treatment there in May 2018, a Psychiatric Evaluation dated May 5, 2020, and Progress Notes dated April 1, 2021 and April 14, 2021.[12]  AR at 1745-98.  Nor is there any indication that Plaintiff was unable to obtain relevant records.  Accordingly, the ALJ's consideration that Plaintiff had a three-year treatment relationship with Dr. Keller, and referred to Dr. Keller as becoming Plaintiff's treating psychiatrist as of May 23, 2018, satisfied the first factor.

---

[12] The record contains significantly more treatment notes from Horizon Health, where Plaintiff previously obtained mental health treatment from October 29, 2012 until September 15, 2016, when Plaintiff was discharged for missing too many appointments.  AR at 532-729.

With regard to the second and third factors pertaining to the amount of medical

evidence supporting Dr. Keller's May 7, 2021 opinion, and whether such evidence is

consistent with the opinion, there are scant medical records from Dr. Keller and

NYSOMH,[13] and those in the record are inconsistent with Dr. Keller's May 7, 2021

opinion.  In particular, Progress Notes pertaining to Plaintiff's admission screening to

receive treatment through NYSOMH provide that with regard to her mental health,

Plaintiff had "some depression" which was "better since Venlafaxine [antidepressant]

increased," was "mildly paranoid," but her speech was coherent and relevant, she had

no hallucinations, was not cognitively impaired, and insight and judgment were fair.  AR

at 1764.

On May 5, 2020, Plaintiff had a mental status evaluation by telephone[14] with Dr.

Barrios of NYSOMH who reported Plaintiff "has symptoms of anxiety and depression.

Has nightmares of her sexual abuse."  AR at 1789.  Dr. Barrios further reported

Plaintiff's appearance was pleasant, talkative, and cooperative, and thought process

was "not overtly delusional, some referential ideation," feels people stare at her and has

felt people talk about her.  AR at 1774.  With regard to perceptual disorders, Dr. Barrios

found Plaintiff "at times feels people call her name," and "at times sees things which are

---

[13] Despite the paucity of medical records from NYSOMH and Dr. Keller pertaining to Plaintiff, Plaintiff does not argue that there is a gap in the record, nor did Plaintiff identify or otherwise describe any additional records she believed existed and were missing so as to trigger the ALJ's duty to subpoena such records.  *See Perry v. Saul*, 2020 WL 5544347, at * 5 (W.D.N.Y. Sept. 16, 2020) (finding ALJ did not fail to develop the record where, at the administrative hearing, the claimant's attorney advised of outstanding records she was trying to locate, the ALJ agreed to hold the record open to allow the attorney to submit the records, but the records were never submitted and the attorney never sought the ALJ's assistance in obtaining the records, "including requesting the ALJ exercise her authority pursuant to 20 C.F.R. § 405(d) to subpoena such records. . . .") (citing *Jordan v. Comm'r of Soc. Sec.*, 142 Fed.Appx. 542, 543 (2d Cir. 2005)).

[14] The telephone evaluation was necessitated by restrictions imposed during the COVID-19 pandemic. AR at 1789.

not there (cats among them").[15]  *Id*.  Plaintiff was oriented in all three spheres (person, place and time), had no gross memory impairment, was of average intelligence with an eighth-grade education, had no problem with verbal skills, insight was fair with some understanding regarding her mental illness, and judgment was limited based on her lack of participation in therapy with Plaintiff's history of non-compliance at her previous treatment clinic noted.  *Id*.  Plaintiff's mental health diagnoses included PTSD and unspecified bipolar and related disorder.  *Id*.  Treatment recommendations included treatment for anxiety, dysphoria (unpleasant or unhappy mood), nightmares and flashbacks, and her prognosis was fair provided Plaintiff was compliant with treatment. *Id*. at 1775.

At an April 1, 2021 mental status examination by Dr. Keller, Plaintiff had intact attention, mood was anxious, affect was reactive and congruent with mood, speech was spontaneous with rate, volume, and tone all within normal limits, she was oriented to time, place and person, and alert, thought process was goal-directed and logical with no abnormal content, Plaintiff was without homicidal or suicidal ideation, behavior was engaged and cooperative, and insight and judgment were intact.  *Id*. at 1767.  Plaintiff reported feelings of stress, anxiety, and frustration which were attributed to concerns about finances, medical appointments and providers, and legal involvement with her attempts to obtain disability benefits and a lawsuit pertaining to her recent automobile accident.  *Id*.  Plaintiff also reported progressing with studies to obtain her GED.  *Id*. Significantly, Dr. Keller reported Plaintiff's "ongoing sources of situational stress appear to result in mild increases in stress and anxiety, and moderate feelings of frustration, but

---

[15] Plaintiff cares for six feral cats.  AR at 1765, 1770.

seem to have minimal impact on functioning as progress is being made towards GED studies management of medical appointments (both personal and son's)." *Id*. Dr. Keller further noted that "[a]lthough feelings of stress, anxiety, and frustration are reported since last appointment, improvements to functioning and ability to manage these feelings is evidenced (significant progress)," and "[i]mprovements to attendance of appointments with medical specialists is reported and progress is evidenced by attendance of scheduled appointments with this writer [Dr. Keller] (moderate progress)." *Id*. at 1768.

In short, the medical records from NYSOMH, including from Dr. Keller and Dr. Barrios, fail to support Dr. Keller's assessments in the May 7, 2021 Medical Source Statement that Plaintiff would be precluded from performing three of 21 separate mental abilities and aptitudes required for unskilled work between 11% and 20% of an 8-hour workday, AR at 1749-51, be off-task for 30% of an 8-hour workday, *id*. at 1752, and miss more than four days of work each month. *Id*. Significantly, in the May 7, 2021 Mental Medical Source Statement, Dr. Keller also opined that Plaintiff's "symptoms and resulting functional limitations" would not increase if Plaintiff were to work in a full-time position. *Id*. Furthermore, the ALJ's determination that "the record does not support the findings that the claimant would be off task more than 30 percent of the day or absent more than four days per month," AR at 1332, not only is supported by the record, but also provides the reason why the ALJ gave the May 7, 2021 Mental Medical Source Statement "only some weight," *id*., in contrast to the assertion, Plaintiff's Reply at 1, that the ALJ failed to properly apply the *Burgess* factors as found in *Claudio-Montanez*, 2022

WL 17819123, at * 3 (concluding the ALJ failed to apply the *Burgess* factors when no explanation was provided for assessing the weight given to medical opinions).

Not only did the ALJ find Dr. Keller's May 7, 2021 opinion inconsistent with the treatment records from NYSOMH, the ALJ also found Dr. Santarpia's psychiatric evaluation to be internally consistent with Plaintiff's progress notes and mental status examinations completed through NYSOMH. Specifically, Dr. Santarpia's mental status examination found Plaintiff's demeanor and responsiveness to questions were cooperative, Plaintiff's manner of relating and overall presentation adequate, appearance was consistent with Plaintiff's stated age, mode of dress was casual, Plaintiff was well-groomed, had normal posture, normal motor behavior, and eye contact was appropriate. AR at 2324-25. Plaintiff's speech was intellectually fluent with clear quality of voice, and adequate expressive and receptive language. *Id*. at 2325. Dr. Santarpia also determined Plaintiff's thought processes were coherent and goal directed with no evidence of hallucinations, delusions or paranoia in the evaluation setting. *Id*. Plaintiff's affect was reported as "full range and appropriate in speech and thought content," *id*., mood was euthymic (stable and without significant mood disturbances), sensorium was clear, and Plaintiff was oriented in all three spheres. *Id*. at 2326. Plaintiff's attention and concentration were intact and Plaintiff was able to perform simple one-step and two-step mathematical calculations and serial 7s. *Id*. Plaintiff's recent and remote memory skills were also intact, cognitive functioning was estimated in the average range of ability, general fund of information was appropriate to experience, and both insight and judgment were fair. *Id*. Plaintiff's mode of living included being able to dress, bathe and groom herself, but Plaintiff did not cook, clean,

do laundry, or shop. *Id*. Plaintiff was able to manage money, had a driver's license and could drive, she socializes, and spends her days watching television, reading, and playing games on her cell phone. *Id*. Plaintiff was also involved in a GED program. *Id*. On an associated Medial Statement of Ability To Do Work-Related Activities (Mental) form, Dr. Santarpia indicated Plaintiff had no restriction for any of 11 separately listed mental activities pertaining to understanding, remembering and executing simple and complex instructions, making simple and complex work-related decisions, and interacting with the public, co-workers, and supervisors as well as appropriately responding work situations. *Id*. at 2328-29.

> Dr. Santarpia's Medical Source Statement included that Plaintiff
>
> presents as able to understand, remember, and apply simple directions and instructions, use reason and judgment to make work-related decisions, interact adequately with supervisors, coworkers, and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and be aware of normal hazards and take appropriate precautions within normal limits. Mild impairment is demonstrated in understanding, remembering, and applying complex directions and instructions and regulating emotion, controlling behavior, and maintaining well-being. Difficulties are caused by distractibility.

AR at 2327.

Dr. Santarpia diagnosed Plaintiff with major depressive disorder, mild, and unspecified anxiety disorder, and recommended Plaintiff continue with psychological and psychiatric treatment, attend her GED program, and follow up with vocational training and rehabilitation. *Id*. Plaintiff's prognosis was "fair" and she was able to handle her own funds. *Id*.

The ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record. *See*

*Hairston v. Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) ("It is well-established that '[a] well-supported opinion from a consultative examining physician, . . . may ... provide substantial evidence supporting an ALJ's decision.'" (quoting *Cassandra K. v. Comm'r* of Soc. Sec., 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019))), *aff'd sub nom. Hairston-Scott v. Comm'r of Soc. Sec.*, 2021 WL 3777581 (2d Cir. Aug. 26, 2021); and *Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence). Nevertheless, the ALJ observed that Dr. Santarpia's opinion regarding Plaintiff's limitations was "not consistent with the claimant's psychiatric record which shows she is somewhat further limited," especially with regard to Plaintiff's "memory and understanding, adaptation, concentration, and interacting with others, and examinations showed an anxious mood and affect, fair insight and judgment, and mild paranoia." AR at 1333. The ALJ thus gave Dr. Santarpia's opinion "little weight." *Id*. A comparison of the Dr. Santarpia's opinion with the Progress Notes from NYSOMH supports the ALJ's determination that Plaintiff was more limited in her mental abilities than found by Dr. Santarpia.

Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 24, that the ALJ, by failing to give controlling weight to any opinion, improperly relied on raw medical data. "[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Cook v. Comm'r of Soc. Sec.*, 818 Fed.Appx. 108, 109–10 (2d Cir. 2020) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013), and *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Here,

because the NYSOMH treatment notes are in line with the ALJ's RFC determinations, and because Plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations, the ALJ was not faced with 'any clear gaps in the administrative record' that gave rise to an affirmative obligation to seek a medical opinion [to rationalize such gaps]." *Id.* (quoting *Rosa*, 168 F.3d at 79-80).  The record thus establishes that the substance of the treating physician rule was not transversed by the ALJ's failure to give Dr. Keller's May 7, 2021 opinion controlling weight.  *Estrella*, 925 F.3d at 95-96.  *See also Tricarico v. Colvin*, 681 Fed.Appx. 98, 100-01 (2d Cir. 2017) (a treating physician's opinion need not be given controlling weight either where it is internally inconsistent or inconsistent with other evidence in the record).

Further, a thorough review of the second ALJ decision and the administrative record establishes that in formulating the RFC that accounted for Plaintiff's mental impairment, in addition to the NYSOMH treatment notes, ALJ Georger relied on Plaintiff's activities of daily living and other medical reports.  The ALJ observed that Plaintiff's self-described activities of daily living on her Function Report – Adult, filed in connection with her disability benefits application, AR at 281-98, and her testimony at the second hearing, AR at 1345-73, that her mental impairments caused difficulty with long and short-term memory, attention and concentration, following written and oral instructions, making decisions, relating to others, being in crowds, following a television show, reading, and completing chores, were inconsistent with other evidence of record. In particular, Plaintiff also reported being able to care for her son, pet cats, handle her personal care, prepare meals, shop in stores, handle money, drive, play video games, and use the internet.  AR at 286-90, 1351-52, 1360-61, 1364.  The ALJ considered that

Dr. Keller, in his July 6, 2018 medical source statement AR at 1304-12, assessed

Plaintiff with regard to 25 separate mental abilities and aptitudes for work, finding

Plaintiff unlimited in 11, limited but satisfactory in nine, and seriously limited in five.  AR

at 1309-10.  Dr. Keller also commented that he was unable to opine as to how often

Plaintiff would be absent from work and whether Plaintiff could engage in fulltime work

because Plaintiff was then a new patient.  AR at 1311-12.  A consultative psychiatric

evaluation performed by Dr. Ransom on October 21, 2016, was remarkable only with

regard to Plaintiff's affect which Dr. Ransom described as "mildly tense," and some mild

difficulties performing complex tasks, relating adequately with others, and appropriated

dealing with stress because of a major depressive disorder which was then mild.  AR at

731-34.  Because other evidence in the record, particularly the NYSOMH records

showed objective findings of Plaintiff's anxious mood and affect, fair insight and

judgment, and mild paranoia, the ALJ granted Dr. Ransom's opinion only partial weight.

     The ALJ also considered treatment records from HHS where Plaintiff received

mental health treatment before being discharged for noncompliance.  AR at 1324

(referencing AR at 532-729).  A review of the treatment records from HHS shows that

upon commencing treatment with HHS on October 29, 2012, Plaintiff was diagnosed

with major depressive disorder, and generalized anxiety order.  AR at 584.  Notes from

Plaintiff's psychiatric medical exams consistently report Plaintiff with depression and

anxiety disorders, otherwise normal.  *See*, *e.g.*, Psychiatric Medical Exam report dated

January 26, 2016 (AR at 613-14) (rating Plaintiff's appearance as "adequately

groomed," behavior was "appropriate," eye contact was "good," mood was anxious and

irritable, affect was "appropriate," speech was "normal" as to rate, tone, amount, and

clarity, thought process was "logical," she had no delusions, perceptions were "normal," judgement was "fair," orientation was "normal," memory was "intact," concentrations were "good," insight was "fair," appetite was "good," sleep was "good," and estimated IQ was "average").  That these reports were consistently made over the course of Plaintiff's treatment with HHS supports the ALJ's determination that Plaintiff's mental health impairments did not render her unable to perform SGA.

Accordingly, there is substantial evidence in the record supporting ALJ Georger's formulation of Plaintiff's RFC with regard to her mental impairments.  *See*, *e.g.*, *Barry J. v. Commissioner of Social Security*, 725 F.Supp.3d 312, 321-22 (W.D.N.Y. 2024) (discussing, in affirming the ALJ's determination that the plaintiff was not disabled, that the ALJ considered medical evidence in the record regarding the plaintiff's mental health impairments including plaintiff's mental status examinations that consistently showed symptoms of depression, hearing voices, feeling paranoid, irritability, fatigue, social withdrawal, psychomotor retardation and depression).

Turning to Plaintiff's argument that the ALJ failed to properly consider Dr. Cardamone's opinion, Plaintiff's Memorandum at 25-27, Plaintiff acknowledges that Dr. Cardamone, as a chiropractor, is not deemed an acceptable medical source, *see* 20 C.F.R. § 416.902 (listing acceptable medical sources), but that his opinion nevertheless is "'important' and 'should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'"  *Id*. at 25 (quoting *Fountain v. Berryhill*, 2018 WL 4658203, at * 4 (W.D.N.Y. Sept. 27, 2018)).  According to Plaintiff, the ALJ erred by rejecting Dr. Cardamone's opinion "out of hand."  *Id*. at 25-26.  In opposition, Defendant maintains the ALJ properly incorporated into the RFC all

of Plaintiff's back impairments, pain, and decreased ranges of motion that are supported

by the record including Dr. Cardamone's diagnoses.  Defendant's Memorandum at 20-

22.

Although "the ALJ is certainly free to consider the opinion of [other medical

sources] in making his overall assessment of a claimant's impairments and residual

abilities, those opinions do not demand the same deference as those of a treating

physician."  *Genier v. Astrue,* 298 Fed.Appx. 105, 108 (2d Cir. 2008).  Here, a plain

reading of the second ALJ decision demonstrates the ALJ incorporated many of the

limitations assessed by Dr. Cardamone into Plaintiff's RFC, including that Plaintiff

needed a job that permitted her to shift positions at will from sitting, standing, or walking,

could occasionally use ramps and stairs, never use ladders, ropes, of scaffolds, and

occasionally stoop, balance.  *Compare* AR at 1322 *with* AR at 1742-43.  Although the

ALJ found Plaintiff capable of performing work of "light" exertion, which includes

occasionally lifting and carrying up to 20 lbs., 20 C.F.R. § 416.967(b), in contrast to Dr.

Cardamone's limiting Plaintiff to lifting and carrying only 10 lbs., the ALJ explained that

requirement was inconsistent with other evidence in the record establishing Plaintiff,

despite diagnostic imaging showing degenerative disc disease, AR at 1683-84, retained

full five out of five strength, had negative straight leg raise, intact sensation, and normal

gait with no assistive device.  AR at 1333 (citing AR at 1733-36 (October 30, 2020

report to Dr. Cardamone from physical therapist at Pinnacle Orthopedic & Spine

Specialists advising Plaintiff's low back pain was her main complaint, and despite some

decreased range of motion in her spine and lower extremities, Plaintiff walked "with a

well balanced gait," had no difficulty standing up from a seated position, used no

assistive walking device, had functional range of motion in her elbows, wrists, hips, knees and ankles, and full 5 out of 5 strength in all extremities, and negative straight leg raising test bilaterally)).  Additionally, the ALJ's RFC assessment is more restrictive than Dr. Liu's consultative opinion, rendered after physical examination, that Plaintiff "has mild limitation for prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavy weights, prolonged sitting, and standing."  AR at 2335.  Dr. Liu's individual findings that the ALJ did not adopt include that Plaintiff could continuously lift and carry up to 20 lbs., AR at 2337, continuously climb stairs and ramps, balance, and stoop, and frequently climb ladders and scaffolds, kneel, crouch, and crawl.  *Id*. at 2340.  Accordingly, the ALJ did not err in assigning Dr. Cardamone's opinion "little weight."  AR at 1333.

Moreover, a thorough review of the record reveals substantial evidence supporting the ALJ's determination that despite diagnostic imaging tests, including MRIs on April 3, 2019, establishing Plaintiff has degenerative disc disease of the cervical, thoracic, and lumbar spines, AR at 1683-85, Plaintiff's degenerative disc disease did not prevent Plaintiff from performing a limited range of light work.  Specifically, upon examination by rehabilitation and pain management specialist Dr. Pilly on September 24, 2020, Plaintiff showed no signs of acute distress, and with regard to the cervical spine, Plaintiff had reduced lordosis (curvature), decreased range of motion, positive forward head posture, and unequal shoulder heights, pain with palpation and range of motion, and positive trigger points.  AR at 2304-10.  Dr. Pilly interpreted Plaintiff's April 3, 2019 MRIs as showing "minimal disc bulging at C5-C6 and C7-T1," with "no significant central or foraminal stenosis at any level," and "disc heights are well-

preserved and well-hydrated." *Id*. at 2305. The MRI of Plaintiff's lumbar spine was interpreted by Dr. Pilly as showing "bilateral facet hypertrophy causing at least moderate right foraminal stenosis without central stenosis" at L5-S1, "disc heights were well preserved and well hydrated," the MRI of the thoracis spine "is normal," and "there is no cervical or lumbar spondylolisthesis." *Id*. Plaintiff walked with a normal gait, *id*. at 2307, had some reduced range of motion with pain, yet sensation was intact, strength was 5 out of 5 in all joints, and reflexes were normal. *Id*. at 2308-09. Dr. Pilly diagnosed Plaintiff with cervical strain with minimal cervical disc building, thoracic strain, and lumbar strain. *Id*. at 2309. Dr. Pilly administered pain and steroid injections into Plaintiff's cervical spine on February 11, 2021, and lumbar spine on January 28, 2021, and July 30, 2021. AR at 2312-16. On September 2, 2021, Plaintiff reported the cervical injection provided 50% relief, and although the first lumbar injection provided no relief, the second lumber injection provided relief for a few days. *Id*. at 2284. Plaintiff then commenced massage therapy to treat her back pain. *Id*.

To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's decision that Plaintiff is not disabled under the Act. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) ("Under this 'very deferential standard of review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*,' [*i.e.* because the ALJ's findings of fact are

not supported by substantial evidence]." (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Here, because the ALJ's decision is supported by substantial evidence in the record, it cannot be said that a reasonable factfinder would have to conclude otherwise.  Further, the Supreme Court recently reaffirmed that the threshold for substantial evidence "is not high . . . .  It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citation and quotation marks omitted).  Importantly, as noted, *see* Discussion, *supra*, at 10, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).  In the instant case, the ALJ's decision that Plaintiff could perform a limited range of light work such that Plaintiff was not disabled is supported by substantial evidence in the record.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 18) is GRANTED.  Defendant's motion for an extension of time (Dkt. 16), and Defendant's amended motion for an extension of time (Dkt. 17) are DISMISSED as moot.  The Clerk of Court is DIRECTED to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    February 13, 2025
          Buffalo, New York